# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| MATTHEW STONE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) Case No. 3:12-cv-0396 |
| v. | ) Judge Aleta A. Trauger |
| | ) |
| MARTEN TRANSPORT, LLC, MAX R. | ) |
| PITTNER, JR., AMERICOLD MFL 2010, | ) |
| L.L.C., and DLS TRUCKING, INC., | ) |
| | ) |
|     Defendant, | ) |

## MEMORANDUM

Defendant DLS Trucking, Inc. ("DLS Trucking") has filed a Motion for Summary Judgment (Docket No. 116). In circumstances that present a peculiar procedural posture, plaintiff Matthew Stone has filed a Response stating that he does not oppose the DLS Trucking's motion (Docket No. 122), whereas defendants Marten Transport, LLC and Max R. Pittner, Jr. (collectively, "Marten/Pittner") and Americold MFL 2010, L.L.C. ("Americold") have filed separate Responses in opposition to the motion. (Docket Nos. 126 and 134.)[1] DLS Trucking filed separate Replies to Americold's and Marten/Pittner's opposition briefs. (Docket Nos. 129

---

[1] Marten Transport employed Max Pittner during the incident at issue. Stone originally asserted both compensatory and punitive claims against Pittner, as well as compensatory and punitive damages claims against Marten Transport individually and on a *respondeat superior* basis. On April 23, 2014, the court entered Consent Judgments dismissing the individual claims and punitive damages claims against Marten Transport and the punitive damages claims against Pittner. (Docket Nos. 139 and 140.) With respect to Marten Transport and Pittner, only non-punitive individual claims against Pittner and vicarious liability claims against Marten Transport remain. Because Marten Transport and Pittner have defended the lawsuit jointly, the court will refer to them collectively as "Marten/Pittner," unless the context requires otherwise. The court also notes that, without opposition and with leave of court, Marten/Pittner filed a late Response to DLS Trucking's motion.

1

(responding to Americold) and 135 (responding to Marten/Pittner).) For the reasons stated herein, the motion will be granted, Stone's claims against DLS Trucking will be dismissed, the court will not enter a "final judgment" for DLS Trucking under Rule 54(b) at this stage, and the court expresses no opinion concerning the preclusive effect of the associated summary judgment order as it relates to listing DLS Trucking on the verdict form.

## BACKGROUND

### I. Basic Facts

Americold owns a trucking distribution center in Murfreesboro, Tennessee, where it provides temperature controlled warehousing for the storage and movement of General Mills products. Trailer trucks pick up and unload trailers at the facility. The facility has two main parking lots, "Lot 1" and "Lot 2," which are separated by a grassy median strip. Americold contracts with DLS Trucking to perform "yard dog" work at the facility, which involves moving empty trailers to the loading docks and moving loaded trailers to Lot 2. When parking the trailers in Lot 2, DLS Trucking is supposed to park the trailers on a concrete landing pad, which is designed to support the weight of the trailer when the trailer's "landing gear" is deployed.

On August 28, 2010, plaintiff Matthew Stone traveled from Shelbyville, Tennessee to Americold's Murfreesboro facility to pick up an empty trailer from Lot 1. On the same day, Max Pittner, who was driving for Marten Transport at the time, intended to pick up a loaded trailer from Lot 2, where DLS Trucking had placed it after moving the loaded trailer away from Americold's loading docks. At Lot 2, Pittner backed his truck up to a loaded trailer, performed a "tug test" to check the connection between the truck and the trailer and to check the brakes, and exited the truck to connect the air lines and electrical lines between the tractor truck and the

trailer. After Pittner raised the landing strips, he attempted to read the seal on the back of the truck. The seal was too high to read, so Pittner went back to his tractor to pull the trailer forward before attempting to read the seal again. For purposes of linguistic simplicity only, the court will refer to that trailer herein as "Pittner's trailer."

At approximately the same time, Stone pulled up to an unloaded trailer in Lot 1 – on the other side of the grass median from Pittner's trailer on Lot 2 – exited his truck, and walked to the back of the empty trailer to examine it.

In the meantime, Pittner prepared to move his truck and the attached trailer forward, but, for reasons unknown to Pittner, it did not move forward. Pittner placed the tractor in neutral and placed his foot on the brake pedal. Unbeknownst to Pittner (initially), the truck and the attached trailer began rolling backwards. After realizing that the truck was rolling backwards, Pittner pressed his foot on the brakes to no avail.[2] Unfortunately, Stone was positioned in Pittner's blind spot and did not see or hear Pittner's trailer backing towards him across the median. Pittner's trailer struck Stone and pinned him between the two trailers, causing him to suffer significant injuries.[3]

## II. Procedural History

On March 28, 2013, Stone filed a First Amended Complaint (Docket No. 50) ("FAC"), which asserted Tennessee state law claims against (1) Marten/Pittner, (2) Americold, and (3)

---

[2]Although it is not material to the instant motion, the parties do not contend that the brakes themselves were defective. The plaintiffs initially added the brake manufacturer as a defendant, but later dismissed the brake manufacturer by joint stipulation. (Docket No. 96.) Under the terms of the Stipulation, the parties agreed not to assign blame to that entity at trial.

[3]According to a Joint Stipulation of Facts filed by the parties, Stone incurred over $193,000 in reasonable and necessary medical expenses as a result of injuries directly caused by the August 28, 2010 incident. (Docket No. 110.)

DLS Trucking.[4] With respect to DLS Trucking, Stone alleged that DLS Trucking negligently failed to place the trailer in a manner that would have prevented it from rolling backwards across the median, negligently failed to remove the danger it created and/or to warn Stone about that danger, and/or negligently failed to take precautions to prevent rollbacks. (FAC ¶¶ 25-27; *see also* FAC ¶ 36 (gross negligence).)

In their respective Answers to the FAC, each defendant pleaded that Stone and/or the other defendants were responsible in whole or in part for Stone's injuries, as either (1) the sole or intervening cause of Stone's injuries, or (2) a contributing cause of Stone's injuries under the doctrine of "modified comparative fault." In most relevant part, Americold and Marten /Pittner specifically pleaded that DLS Trucking was wholly or partially at fault for Stone's injuries.

On November 15, 2013, Stone and DLS Trucking entered into and filed a Stipulation that stated in part as follows:

> DLS Trucking, Inc. has zero percent (0%) fault for the August 28, 2010 accident involving Matthew Stone which is the subject of this lawsuit. 100% of the fault for the accident is between Americold MFL 2010, L.L.C and Marten Transport, LTD/Max R. Pittner, Jr.
>
> This is stipulation may be used for all purposes available during litigation and trial.

(Docket No. 103.) Americold and Marten/Pittner were not parties to the Stipulation. Curiously, notwithstanding the terms of the Stipulation, Stone did not seek to dismiss DLS Trucking from the case.

---

[4]Stone also initially named Utility Trailer Manufacturing Company and Bendix Commercial Vehicle System LLC as defendants. The parties stipulated to the voluntary dismissal of both companies, subject to the condition that no party would blame Utility or Bendix for any of Stone's injuries at trial. (Docket No. 96.)

## III. DLS Trucking's Motion for Summary Judgment

On February 26, 2014, DLS Trucking filed the instant Motion for Summary Judgment, in support of which it filed a Memorandum of Law (Docket No. 117), a Concise Statement of Undisputed Material Facts (Docket No. 118), and evidentiary materials (Docket No. 116, Exs. 1-3.) Anticipating a response from its co-defendants, DLS Trucking argued that Americold and Marten/Pittner lack standing to oppose the motion. DLS Trucking also argued that, as a matter of law, the undisputed facts showed that (1) DLS Trucking was not a "substantial factor" in causing Stone's injuries (*i.e.*, that it was not a proximate cause), or (2) Pittner's actions constituted an independent intervening cause of Stone's injuries.

The remaining parties' responses to the motion have resulted in an uncommon procedural posture. On the one hand, Stone does not oppose DLS Trucking's motion, Stone reiterates (consistent with his Stipulation) that DLS Trucking "has 0% fault for the accident and 100% of the fault is between the remaining co-defendants," and Stone does not dispute any of DLS Trucking's asserted facts. On the other hand, Americold and Marten/Pittner oppose the motion. Americold argues that there are disputed issues of material fact concerning DLS Trucking's culpability and that they (Americold and Marten/Pittner) have standing to raise those issues of material fact in opposition to the motion.[5] Marten/Pittner incorporate Americold's arguments by reference. Marten/Pittner's brief also argues that, in the alternative, the court could treat the

---

[5]In support of its opposition brief, Americold filed (1) a Response to DLS Trucking's SUMF, in which, unlike plaintiff Stone, Americold purports to dispute certain facts. (Docket No. 125); (2) a Concise Statement of Additional Material Facts ("Americold's SAMF"); and (3) evidentiary materials (Docket No. 126, Exs. 1-8). In support of its separate opposition brief, which also incorporated Americold's arguments by reference, Marten/Pittner filed a Response to DLS Trucking's SUMF, which, similar to Americold's position but inconsistent with Stone's position, purports to dispute certain facts. (Docket No. 135.)

Stipulation as a Rule 41 motion for voluntary dismissal and essentially decline to address the Rule 56 motion, thereby preserving the comparative fault defenses of Americold and Marten/Pittner.[6]

Stone and DLS Trucking each filed separate Responses to Americold's SAMF (Docket Nos. 128 and 129), and DLS Trucking filed separate reply briefs addressing Americold and Marten/Pittner's arguments.

## ANALYSIS

**I.     Comparative Fault**

As explained in *Lake v. Memphis Landsmen, LLC*, 2014 WL 895519, at *5 (Tenn. Ct. App. Mar. 7, 2014), Tennessee utilizes the doctrine of comparative fault in tort cases:

> [I]n 1992, the Tennessee Supreme Court abandoned contributory negligence in favor of a system of modified comparative fault. In doing so, the court sought a tighter fit between liability and fault. Under the new system, a defendant would only be liable for the percentage of damages that his or her own negligence caused. Additionally, the court adopted the non-party defense, allowing juries to apportion fault to a culpable person or entity though they are not a party to the lawsuit. The court recognized that without allowing participants in the negligent act to share in the apportionment of fault, the tight fit between fault and liability would be lost. Indeed, this Court has stated that the Trial Court has the responsibility to apportion fault to anyone having a degree of culpability.

2014 WL 8955519, at *5 (internal citations, quotations, and brackets omitted); *see also Carroll v. Whitney*, 29 S.W.3d 14, 21 (Tenn. 2000) (finding that comparative doctrine requires "allocation of fault to *all persons involved in an injury causing event*.") (emphasis added).

In applying the comparative fault doctrine, courts should further the "goal of fairness that underlies [Tennessee's] adoption of comparative fault," not frustrate it by permitting a plaintiff to

---

[6]Marten/Pittner do not cite any legal authority for this proposed approach.

6

"shift to some defendants the fault which is properly allocated to other nonparties." *Id*. at 21. Accordingly, a defendant accused of negligence should be shielded from shouldering liability greater than its proportional degree of fault, "even though such protection may come at the expense of plaintiffs." *Id.* (citing *Carroll v. Whitney*, 29 S.W.3d 14 (Tenn. 2000)); *see also Dotson v. Blake*, 29 S.W.3d 26 (Tenn. 2006) (jury may apportion fault to parties that are "effectively immune," such as those protected by a statute of repose)*; Carroll*, 29 S.W.3d at 21 (finding that jury should have been permitted to allocate fault to an immune non-party, even though it would have precluded plaintiff from receiving full compensation for plaintiff's damages). As stated in *Lake*, this principle applies to non-parties and dismissed parties alike.

## II.  Standing

The parties have engaged in a robust debate about whether Americold and Marten/Pittner have "standing" to oppose DLS Trucking's motion in the first place, where Stone (the plaintiff) has not opposed it. As summarized in a law review article referenced by DLS Trucking in its opening brief, the issue of whether one co-defendant may oppose another co-defendant's motion in the absence of a cross-claim is an issue that has vexed federal district courts. *See generally* Jonathan A. Wolfson, *Warring Teammates: Standing to Oppose a Coparty's Motion for Summary Judgment*, 60 Drake L. Rev. 561 (2012). It does not appear that the Sixth Circuit or any other federal appellate court has addressed this issue.

Having examined the authorities referenced by the parties, the court concludes that Americold and Marten/Pittner have a right to challenge DLS Trucking's motion. Although some courts seem to hold that "standing" to oppose a motion requires that parties be on opposite sides of the "v.", that approach is unnecessarily myopic. In a comparative fault jurisdiction such as

7

Tennessee, a defendant has a stake in whether another entity will be listed on the verdict form, because that other entity (whether or not a party at trial) could be held liable for some measure of the plaintiff's damages, thereby relieving the defendant from being allocated that percentage of liability.

Here, DLS Trucking in part contends that it is entitled to judgment because (1) the plaintiff has stipulated that DLS Trucking is 0% liable, and (2) the plaintiff does not dispute DLS Trucking's statements of fact. If the court were to adopt DLS Trucking's position, it could have adverse consequences for Americold and Marten/Pittner, who might be forced to shoulder any blame that might otherwise be assigned to DLS Trucking. Accordingly, if the court were to ignore Americold and Marten/Pittner's arguments and factual challenges out of hand, it could prejudice Americold and Marten/Pittner's substantive right under Tennessee law to assign blame to potentially culpable parties. Because Americold and Marten/Pittner certainly "have a dog in this fight," the court finds that they have standing to challenge the motion.[7]

---

[7]The court has used the qualifiers "might" and "could" intentionally. The parties have not briefed the issue of the potential preclusive effect of a summary judgment order in favor of DLS Trucking on Americold and Marten/Pittner's rights at trial, although the potential for preclusion seems to animate their respective positions concerning DLS Trucking's Rule 56 motion. Based on the court's own preliminary research, this may be an unsettled issue of law that merits targeted consideration by the parties and the court in advance of trial.

In *McDonald v. Petree*, which involved Tennessee state law claims, the Sixth Circuit found that a defendant *could* assign fault at trial to a former defendant that had obtained summary judgment. 409 F.3d 724 (6th Cir. 2005). This court has located at least two district courts that have struggled with the appropriate application of *McDonald*. *See Jernigan v. CL Bros. Trucking, Inc.*, 2010 WL 2389548 (E.D. Tenn. June 8, 2010) (applying federal common law estoppel doctrine in light of *McDonald* and determining that, under that doctrine, remaining defendants were precluded from attributing fault to former defendant in whose favor final judgment had entered under Rule 54(b) following summary judgment, but that remaining defendants were *not* precluded from attributing fault to two former co-defendants in whose favor judgment had not entered under Rule 54(b) following summary judgment); *Quillin v. Easton*

Based on the court's own research, it appears that this approach is consistent with how Tennessee courts have themselves treated a defendant's right to challenge a co-defendant's motion for summary judgment, where the non-moving defendant has asserted the comparative fault of the moving co-defendant. In *Conley v. Life Care Ctrs. of Am.*, *Inc.*, 236 S.W.3d 713 (Tenn. Ct. App. 2007), a former nursing home resident's estate initially sued Life Care for negligence related to her care. After Life Care asserted the defense of comparative fault and stated that both a Tennessee agency and a third-party psychiatric care company (Genesis) were partially at fault, the plaintiff filed an administrative claim against the agency and filed an amended complaint naming Genesis as a party. When Genesis later moved for summary judgment, the plaintiff *did not* oppose the motion, but Life Care did, contending that genuine

---

*Sports, Inc.*, 2005 WL 3560641, *2 (E.D. Tenn. Dec. 28, 2005) (characterizing *McDonald* as "a significant and unanticipated change in what appeared to be the law in Tennessee"). By contrast, as explained in the Tennessee Practice Series, the Tennessee Supreme Court's recent decision in *Banks v. Elks Lodge of Tenn. 1102*, 301 S.W.3d 214 (Tenn. 2010), which was issued five years after the Sixth Circuit's decision in *McDonald*, suggests that the conclusion in *McDonald* may not have been consistent with Tennessee law. *See* 17 Tenn. Pract. Tenn. Law of Comparative Fault § 12:9, TNPRAC-CF § 12.9 (2013 ed.). In *Banks*, the Tennessee Supreme Court found that, when a court directs a verdict for one defendant, "the jury cannot be requested to allocate any portion of the fault to the now-dismissed defendant." 301 S.W. 3d at 225. In the Tennessee Practice Series, the authors suggest that *Banks* should apply equally to summary judgment orders and that *McDonald* was wrongly decided. *See* TN PRAC-CF § 12.9, n. 16.

Here, because the parties have not directly addressed the issue, the court expresses no opinion concerning the preclusive effect of its summary judgment order in favor of DLS Trucking, nor does the court express any opinion as to the continuing validity, persuasive value, and appropriate application of *McDonald* here. Also, given that DLS Trucking has not requested a final order of judgment in its motion and the court's interest in avoiding some type of unintended consequence of its holding, the court will not enter a final judgment for DLS Trucking under Rule 54(b) at this time, even though it will be dismissing Stone's claims against DLS Trucking. At any rate, presumably the parties will address the preclusive effect of its summary judgment order with the court in advance of trial, whether by agreement or through a dispute, if the issue is contested.

issues of material fact precluded summary judgment in favor of Genesis. The trial court held a hearing on the motion and found in favor of Genesis on the merits.[8] On appeal, the Court of Appeals conducted a "fresh review" of Life Care's challenge to Genesis's motion. The court examined the factual evidence in the record and the opinions of multiple experts, including Life Care's retained expert, who had opined that Genesis had violated its duty of care to the decedent in multiple respects. Based on this review, the court concluded that the evidence in the record "created a genuine dispute of facts material to Plaintiff's claims against Genesis." *Id.* at 737. Accordingly, the court reversed the trial court's dismissal of the plaintiff's claims against Genesis – even though the plaintiff had not opposed Genesis' motion – and remanded the case for a new trial that would list Genesis on the verdict form. *Id.* Although Tennessee law does not control this court's application of federal procedural rules, the court finds it significant that, in the context of applying the doctrine of comparative fault, the Tennessee Courts of Appeal have found that a trial court's refusal to entertain a defendant's meritorious opposition to a co-defendant's motion for summary judgment – even where the plaintiff did not oppose the motion – was reversible error in light of the appropriate application of the comparative fault doctrine.

In sum, the court finds that it is appropriate to consider the merits of Americold and Marten/Pittner's arguments that summary judgment in favor of DLS Trucking is not warranted. To the extent that DLS Trucking has identified district court cases in other jurisdictions reaching a different conclusion – none of which appears to address the potential prejudice to remaining defendants in a comparative fault jurisdiction – the court finds those cases to be unpersuasive on

---

[8]It is not clear whether Genesis or the plaintiff in that case challenged Life Care's right to oppose the motion in the first place.

10

the issue presented here.[9]

On a final note, DLS Trucking suggests that Americold and Marten/Pittner lack "standing" to oppose the motion because they did not file cross-claims against DLS Trucking. In the context of Tennessee's comparative fault regime, that procedural fact is not determinative. In Tennessee, subject to conditions not relevant here, a defendant that asserts the defense of comparative fault may be held liable only for its proportionate fault. Thus, even where another entity is partially at fault in addition to defendant X, defendant X does not hold a "claim" against that other entity for the balance of the plaintiff's damages attributable to that other entity's fault. To quantify the issue, imagine that Americold is found to be 60% at fault, Marten/Pittner 30% at fault, and DLS Trucking 10% at fault for the incident at issue, and that Stone suffered $1 million in compensable damages. Americold would be liable to Stone only for the proportion of those damages for which it is at fault – *i.e.*, $600,000. Americold would not hold a "claim" against its co-defendants for the remaining $400,000, because Americold is not liable to Stone for those damages in the first place. That is essentially the point of the comparative fault doctrine – there is no need for Americold to assert claims for contribution from anyone else. As this example demonstrates, under Tennessee's comparative fault regime, Americold did not have, and does not

---

[9]In its initial brief in support of its motion, DLS Trucking relied on the Drake Law Review article referenced herein. Consistent with the court's conclusion here, that article in fact advocated that district courts *should* find that a co-defendant has the right to challenge another defendant's motion for summary judgment on claims by the plaintiff, where that defendant has a material interest in the outcome of the motion. *See* 60 Drake L. Rev. at 604 "[C]oparties should have the opportunity to oppose co defendant's motions," because "[t]he relevant question is not on which side of the case a party sits – the 'v.' – but rather on which side of an issue the party stands. Parties in opposition to one another or with differing interests on an issue should have standing to make arguments against one another, including opposing codefendant motions for summary judgment. Granting standing prevents appeals, does not unnecessarily impede courtroom efficiency, and protects the rights and interests of all parties to the litigation.")

have, a cross-"claim" against its co-defendants (or, for that matter, any other entity potentially at fault for the incident) to assert in the first place. Therefore, it would make little sense to penalize Americold and Marten/Pittner for "failing" to assert cross-claims that they never held and did not need to assert to vindicate their right under Tennessee law to be liable to Stone only for their proportionate fault.

## III. Summary Judgment Analysis

### A. The Effect of the Stipulation

As an initial matter, the court rejects the proposition that the Stipulation between DLS Trucking and Stone acts as an unassailable determination of DLS Trucking's potential culpability for Stone's injuries. Under Tennessee comparative fault law, Americold and Marten/Pittner should not be held responsible for more than their proportionate share of liability, regardless of whether Stone has abandoned pursuing DLS Trucking for damages (either because Stone truly believes that DLS Trucking is not at fault or for some unstated strategic reason). Indeed, if DLS Trucking had not been made a party in the first place, Americold and Marten/Pittner could still have asserted the comparative fault of DLS Trucking (as a non-party "empty chair") and have sought to list DLS Trucking on the verdict form as a responsible party, since Tennessee permits the jury to assign fault to a non-party.

The question remaining for the court is whether there is a genuine dispute of fact concerning DLS Trucking's potential culpability, regardless of the existence of the Stipulation.

### B. Summary Judgment Standard

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a) (2014). At the summary judgment stage, the moving party bears the initial burden of identifying those parts of the record that demonstrate the absence of any genuine issue of material fact. *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). However, if the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial, the moving party may meet its burden by showing that there is an absence of evidence to support the non-moving party's case. *Id.* (citing *Celotex*, 477 U.S. at 325). "When the moving party has carried this burden, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).) The non-moving party also may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial. *Id.*

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Moldowan*, 578 F.3d at 374 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the nonmoving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita*, 475 U.S. at 587). But "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient," *Moldowan*, 578 F.3d at 374 (quoting *Anderson*, 477 U.S. at 252), and the non-movant's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249. An issue of fact is "genuine" only if the record taken as a whole could lead a rational trier

of fact to find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Matsushita*, 475 U.S. at 587).

### C. Application

#### 1. Statements of Fact

Here, in response to DLS Trucking's motion, Americold and Marten/Pittner have not meaningfully disputed the facts relied upon by DLS Trucking. Although Americold states that certain facts are "disputed as stated," it fails to explain why those facts are disputed, let alone offer contrary evidence. Similarly, Marten/Pittner's response complains that certain facts stated by DLS Trucking simply paraphrase testimony by particular witnesses, but Marten/Pittner fails to identify evidence contradicting or clarifying the stated facts and referenced testimony. Having reviewed these submissions and having considered the individual objections, the court finds that DLS Trucking's asserted facts are essentially undisputed. At any rate, to the extent that DLS Trucking has sought to characterize the testimony of particular witnesses, the court takes the point, and the court accordingly has scrutinized the underlying testimonial excerpts in determining the specific facts that are material to DLS Trucking's motion.

Americold and Marten/Pittner also filed additional statements of fact, which draw from additional factual and expert testimony in the record. The court's analysis also incorporates those facts, which are undisputed for purposes of DLS Trucking's motion.

#### 2. Substantial Factor

Under Tennessee law, to show negligence, a party must prove both causation in fact and proximate cause. *Kilpatrick v. Bryant*, 686 S.W.2d 594, 598 (Tenn. 1993). "In Tennessee, there is a three-pronged test for proximate causation: (1) the tortfeasor's conduct must have been a

14

"substantial factor" in bringing about the harm being complained of; [] (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen and anticipated by a person of ordinary intelligence and prudence." *Fowler v. Henderson*, 2003 WL 23099686, at *7 (citing *McClenehan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991)); *Hale v. Ostrow*, 166 S.W.3d 713, 719 (Tenn. 2005). "Proximate causation is a jury question unless the uncontroverted facts to drawn from them make it so clear that all reasonable persons must agree on the proper outcome." *Roe v. Catholic Diocese of Memphis, Inc.*, 950 S.W.2d 27, 31 (Tenn. Ct. App. 1996) (citing *McClenehan*, 806 S.W.2d at 775); *see also Fowler*, 2003 WL 23099686, at *7 (finding no genuine dispute of material fact on issue of proximate causation and affirming district court grant of summary judgment). Here, DLS Trucking argues that there is no genuine dispute of material fact that any action by DLS Trucking was a "substantial factor" in causing Stone's injuries.

Americold argues that there is sufficient evidence to show that DLS Trucking's placement of the trailer on Lot 2 was a substantial factor in causing Stone's injuries.[10] In its opposition brief, Americold contends that DLS Trucking did not place the trailer completely on the concrete parking strip, that the distance the trailer rolled back onto Stone was therefore shorter, and that, as a consequence, Stone had "less time to recognize and respond [to the situation] than he would have had if the trailer had been properly parked on the parking strip." (Docket No. 126 at p. 10.) In other words, Americold argues that Stone might have been able to avoid the accident if DLS

---

[10]Marten/Pittner incorporated Americold's arguments in opposition to the motion by reference.

Trucking had properly placed the trailer on the concrete slab.

The problem for Americold and Marten/Pittner is that no witness or expert endorsed this theory of liability against DLS Trucking.  One of Americold's Rule 30(b)(6) witnesses testified that neither he nor anyone else at Americold had ever stated or even "speculated" that DLS Trucking had done anything wrong with respect to the August 28, 2010 incident.  Similarly, Americold's regional safety specialist, who apparently was designated to testify on behalf of Americold on the topics of safety inspection and accident investigation, testified that he was not aware of any concerns or criticisms of DLS Trucking by Americold in connection with this lawsuit or in connection with the incident more generally.  Accident reconstruction expert John Glennon, whom the court presumes is a retained expert for Americold,[11] testified that, based on Pittner's testimony, the truck may have been parked only seven feet from Stone, rather than 16 feet from Stone (as it would have been if parked properly).  However, Americold has not identified any testimony by Glennon in which Glennon opined that the shorter distance between the two trucks contributed to the injury by depriving Stone of time to react to the oncoming trailer.  Similarly, at his deposition, Pittner expressed no complaint about DLS Trucking's placement or movement of the truck.  He testified that, immediately before the incident, he did not have "any concerns at all" about the way that the trailer had been parked on the lot, either before or after he raised the landing gear.[12]  Finally, Americold has not identified testimony from

---

[11]Americold's brief does not actually state that it retained Glennon, although the substance of the excerpts from Glennon's testimony suggest that he was retained by Americold.

[12]Pittner reiterated this point multiple times at his deposition.  (*See* Pittner Dep. at 125:3-5 ("Q: And did you have any concerns at all about the way that the trailer was parked on the lot? A: No, because it was flat."), 125:11-14 ("Q: And when you cranked up the landing gear, you didn't have any concerns about the way the trailer was parked, did you? A: No."), 125:21-126:3 ("So when you got into the truck and loaded up the trailer with the kingpin, then you basically

Stone or any other fact witness purporting to blame DLS Trucking for causing Stone's injuries.

In sum, Americold's own witnesses disclaimed any responsibility by DLS Trucking, Pittner disclaimed responsibility by DLS Trucking, no expert opined that the distance between Pittner's trailer and Stone contributed to the incident by depriving Stone of the opportunity to react to the trailer as it rolled back, and no fact witness has testified that DLS Trucking was even partially responsible for the incident.[13] Under the circumstances, the court finds that no reasonable person could conclude that DLS Trucking's conduct was a substantial factor in causing Stone's injuries based on the theory articulated by Americold. Therefore, a jury could not find that DLS Trucking proximately caused the incident and summary judgment for DLS Trucking is warranted on that basis alone.

D. **Intervening Cause**

In Tennessee, the intervening cause doctrine operates to relieve a negligent actor from liability "when a new, independent, and unforeseen cause intervenes to produce a result that the negligent actor could not have reasonably foreseen." *Rains v. Bend of the River*, 124 S.W.3d 580, 593 (Tenn. Ct. App. 2003).[14] Here, because the court finds that summary judgment for DLS

---

were ready to go forward and didn't have any concerns at all? A: No. Q: About the way the trailer was parked? A: No. Q: That's a true statement? A: Yes."), 126:16-18 ("Q: But when you went and picked up this trailer, there weren't any concerns to you at all? A: I never had an issue there before."), and 126:24-127:6 ("[Y]ou did a full observation of where those tires were parked on the pavement? A: Yeah, I seen [sic] they were real close to the pavement. Q: Okay. But that wasn't any concern to you? A: No[.]").)

[13]It goes without saying that, since Stone has stipulated that DLS Trucking is 0% liable, Stone does not hold with this theory that (1) more time to react would have prevented or lessened his injuries or, for that matter, (2) closer placement of the trailer was otherwise a cause of his injuries.

[14]"The doctrine applies when the intervening act (1) was sufficient by itself to cause the injury; (2) was not reasonably foreseeable to the negligent actor, and (3) was not a normal

17

Trucking is warranted on the independent basis that there is not a genuine dispute of material fact concerning proximate cause (for the reasons stated in the previous section), the court need not address DLS Trucking's alternative argument that it is also entitled to summary judgment because Pittner's actions constituted an intervening cause of Stone's injuries.

### E. Final Thoughts

Having considered Americold and Marten/Pittner's countervailing arguments on the merits, the court finds that summary judgment in favor of DLS Trucking is warranted. Marten/Pittner has not articulated any legal grounds under which the court should treat the Stipulation by DLS Trucking as a Rule 41(a) motion, at least under the circumstances presented here.[15] The court will therefore dismiss Stone's claims against DLS Trucking. However, in an abundance of caution, the court will not enter final judgment in favor of DLS Trucking at this time, although DLS Trucking is without prejudice to file a separate motion for entry of final judgment under Rule 54(b).

In light of the court's findings in this opinion and the court's separate Memorandum and

---

response to the negligent actor's conduct." *Id.* at 593. If those conditions are met, the superseding cause "breaks the chain of proximate causation." *White*, 975 S.W.2d at 529.

[15]Certainly, if the court had found that there *is* a genuine dispute of material fact concerning DLS Trucking's potential culpability, it would have created an odd and presumably uncommon scenario. If DLS Trucking remained a party, it would need to "defend" itself against claims for which it faces no liability to the plaintiff, because (and this is the odd part) the plaintiff essentially disclaimed any right to recover from DLS Trucking, even if the co-defendants satisfied the jury that DLS Trucking is proportionally at fault. Because Tennessee permits the jury to assign liability to non-parties or dismissed parties under appropriate circumstances, it would seem to make no difference whether DLS Trucking remained a party or not. Under that assumption, it would seem unfair to force DLS Trucking to incur trial-related litigation costs in a case in which it no longer faces potential liability. At any rate, the court need not consider how it might have exercised its equitable discretion under this scenario, because DLS Trucking *is* entitled to summary judgment for the reasons stated herein.

Order addressing Americold Partial Motion for Summary Judgment, it appears that the following claims remain for trial: (1) Stone's non-punitive damages claims against Americold; (2) Stone's non-punitive damages claims against Pittner individually; and (3) Stone's non-punitive damages claims against Marten Transport based on a theory of vicarious liability only. Again, because the parties have not directly addressed the issue, the court expresses no opinion concerning whether its grant of summary judgment to DLS Trucking precludes Americold and Marten/Pittner from asserting at trial that the jury should assign fault to DLS Trucking.

## CONCLUSION

DLS Trucking's Motion for Summary Judgment will be granted and Stone's claims against DLS Trucking will therefore be dismissed.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge